UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PEGGY J. DEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:04-CV-01789-RWS |
| ) | |
| CONSUMER PROGRAMS, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF HER MOTION FOR SUMMARY JUDGMENT**

Plaintiff Peggy Deal ("Deal") submits this memorandum in support of her Motion for Summary Judgment. Her Statement of Undisputed Facts is attached.

**I. Overview**

This case arises out of Deal's employment with defendant ("CPI"). She was an Executive Vice-President of the company. As an officer, Deal was granted valuable rights under a written Employment Agreement and a separate Stock Option Agreement. CPI breached both of these contracts.

As part of a change of control at CPI, many of its executive officers, including Deal, were removed. Deal's termination was without "Cause," as defined in her Employment Agreement. CPI had no right under the Employment Agreement to terminate Deal without cause. In further breach of its Agreement, CPI withheld substantial benefits owed Deal under the contract. It then refused to honor Deal's request for stock due under her Stock Option Agreement. This litigation resulted.

-1-

## II. Argument

This case is particularly suited for summary relief. "There are no genuine issues of material fact in dispute, only issues of law and contract interpretation, making the matter appropriate for summary judgment." *Cincinnati Insurance Company v. Meramec Valley Bank*, 259 F.Supp.2d 922, 927 (E.D. Mo. 2003).

This case is controlled by Missouri law.[1] The standards for contract interpretation in Missouri are well-settled and familiar. "The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent. The intent of the parties to a contract is presumed to be expressed by the ordinary meaning of the contract's terms. If the contract is unambiguous, it will be enforced according to its terms." *Triarch Indus. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005).

When the parties' contracts are given their plain meaning, it should be concluded as a matter of law that Deal is entitled to the various items of relief she seeks. These items are discussed separately below.

A. <u>Interest on CPI's untimely Severance Payment</u>

The Employment Agreement provides that Deal was to receive Severance equal to 200% of her Base Salary in the event she was terminated without "Cause" after a "Change of Control" of CPI's board of directors. *Statement of Undisputed*

---

[1] Both contracts were entered into Missouri, Further, the Employment Agreement specifically provides for the application of Missouri law. *Exhibit 1*, section 18.

*Material Facts ("S.O.F."), ¶ 8*. Specifically, she was to receive a Severance payment of $490,000 if terminated under these circumstances. *S.O.F., ¶ 10*.

Most of CPI's board members were replaced in early 2004. *S.O.F., ¶ 9*. Deal was thereafter terminated on May 14, 2004. *S.O.F., ¶ 6*. CPI has always acknowledged that Deal's termination was without Cause and after a Change of Control. *S.O.F., ¶s 6 and 9*. It even established an accounting reserve to pay Deal her $490,000 Severance and admitted liability for her Severance in its interrogatory answers. *S.O.F., ¶ 11*. These facts notwithstanding, for more than a year, CPI wrongfully withheld the $490,000 in Severance admittedly owed Deal. *S.O.F., ¶ 12*.

CPI only paid the Severance after the Court ordered the parties to mediation. A mediation was held on May 23, 2005. That day, CPI finally paid Deal her long overdue Severance. *S.O.F., ¶ 13*.

The amount paid, however, was not for the proper amount. CPI paid $26,650 in interest on the $506,019 principal owed (the principal paid included $16,019 in unpaid Vacation also admittedly owed Deal and not previously paid). Compounded quarterly at 5.25% (the contract rate), the interest on that principal amount from May 14, 2004 (date due) through May 23, 2005 (date paid) is actually $27,783.74.[2] CPI thus owes Deal an additional $1,133.74 in interest.[3] *S.O.F., ¶ 14*.

---

[2] The Employment Agreement provides for interest at the prime commercial lending rate of Firstar Bank (now US Bank), compounded quarterly. *Exhibit 1*, section 12. The parties agree the appropriate interest rate is 5.25%.

[3] Although the amount of this claim is admittedly slight, the facts regarding CPI's withholding of Deal's Severance are relevant to other aspects of this

### B. Base Salary

The Employment Agreement was for an express term and provided that CPI could only terminate Deal for "Cause," or upon her death or permanent disability. *S.O.F., ¶ 5*. CPI admits it terminated Deal's employment six months prior to the expiration of the contract term. It also admits the termination was **without** "Cause." *S.O.F., ¶ 6*. Deal's early termination was a clear breach of the parties' contract, entitling her to damages.

"The measure of damages for the breach of an employment contract is *prima facie* the agreed contract price for the services to be rendered ...." *Phipps v. School District of Kansas City, Missouri*, 645 S.W.2d 91, 105 (Mo. App. 1982).[4]

The parties' agreed contract price for the services to be rendered, or "Base Salary," was $245,000 per year. *S.O.F., ¶ 10*. At the time of her termination, CPI had paid Deal only $138,991 in Base Salary for the then current contract year. *S.O.F., ¶ 17*. CPI has refused to pay Deal the remaining $106,009 in Base Salary owed under the Employment Agreement.

---

motion. It should be further noted that CPI wilfully withheld Deal's $490,000 Severance purely as leverage in an attempt to obtain concessions on other aspects of Deal's claim. Deal thus seeks punitive damages as well. She recognizes, however, that an award of punitive damages is not proper for summary relief. Accordingly, her claim for punitive damages is not part of this motion.

[4] The employer is normally entitled to an offset for "the income the employee earned – or with diligence could earn – during the life of the contract." *Phipps*, 645 S.W.2d at 105. CPI is not entitled to any such offset. By the Employment Agreement, the parties agreed that Deal had no obligation to mitigate her damages by seeking other employment and that no offset would be made in the event Deal obtained alternative employment. *S.O.F., ¶ 16*.

CPI claims its obligations to Deal under the Employment Agreement ended with its Severance payment, and that it owes no further Base Salary. The Employment Agreement, however, specifically provides that: "**In addition** [to the Severance payment, Deal] **shall** be entitled to all remedies available under this Agreement or at law in respect of any damages suffered by [Deal] as a result of any involuntary termination of employment without Cause." (Emphasis added). *S.O.F., ¶ 15*.

By the plain meaning of the parties' contract, Deal is entitled to her Severance and all additional remedies available under the law. The unpaid contract price is the *prima facie* legal remedy in such a case. Deal should be awarded $106,009 for her unpaid Base Salary.

C.   Unpaid Bonus

The Employment Agreement provides that Deal would receive a Bonus after a Change of Control equal to her highest bonus earned in the prior three years. *S.O.F., ¶ 18*. The highest bonus earned by Deal in the three years before the Change of Control was $12,035. *S.O.F., ¶ 19*.

CPI admits there was a Change of Control, but has refused to pay Deal anything for her earned Bonus. It presumably believes its payment of Severance satisfied any obligation to pay the Bonus. This argument again ignores the Employment Agreement, which clearly states that Severance is not the sole remedy. Deal is owed $12,035 for her Bonus.

D.   Failure to Issue Stock

By a written Stock Option Agreement, Deal was granted an option to purchase 16,204 shares of CPI capital stock at a price of $12.96 per share. *S.O.F., ¶ 23*. That option has substantial value. The stock is currently trading between $17.00 and $18.00 per share. Further, CPI pays a quarterly dividend to its shareholders equal to $.16 per share. *S.O.F., ¶ 32*.

Upon her termination, Deal's stock option became fully exercisable. CPI admits this fact. *S.O.F., ¶ 25*. A month after her termination, Deal gave written notice of her intention to exercise her option. *S.O.F., ¶ 28*. There is no issue as to the timeliness of that notice.

By her notice, Deal stated unequivocally that she was prepared to pay, in cash, the entire purchase price for the stock. In light of CPI's withholding of her $490,000 Severance, however, Deal did not remit payment for the stock. Instead, she requested assurances from CPI that it would issue the stock upon her payment. This was all clearly stated in a written notice from Deal's counsel to CPI's senior counsel. *S.O.F., ¶ 28*.

CPI ignored Deal's notice. It did not respond in any way and gave no assurances that it would honor the Stock Option Agreement. *S.O.F., ¶ 29*.

Deal, through her counsel, followed-up, and sent another notice to CPI's counsel which reaffirmed Deal's intent to exercise the stock option. *S.O.F., ¶ 30*. CPI again ignored Deal, while all along continuing to hold more than $490,000

admittedly owed her. *S.O.F., ¶ 31*.

Deal is clearly entitled to her stock. CPI's only defense is that Deal failed to properly exercise her option. It claims that to properly exercise the option, Deal was required to have remitted payment for the stock with her notice (in addition to the $490,000 in Severance belonging to Deal which it already had).

Deal disagrees with CPI's interpretation of the Stock Option Agreement. That issue aside, however, CPI breached the Stock Option Agreement in failing to cooperate with Deal in performing their Agreement.

> Missouri law implies a duty of good faith and fair dealing in every contract. *See Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 410 (Mo. App. 1996); *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 368 (Mo. App. 1996). This implied duty "prevents one party to a contract to [sic] exercise a judgment conferred by the express terms of the agreement in such a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract." *Acetylene Gas,* 939 S.W.2d at 410. Put another way, "[i]t is the duty of one party to a contract to cooperate with the other to enable performance and achievement of the expected benefits." *Slone*, 927 S.W.2d at 368.

*Countrywide Services Corporation v. SIA Insurance Company*, 235 F.3d 390, 393 (8th Cir. 2000).

Deal clearly tried to exercise her stock option. For its part, CPI completely ignored her. In violation of its duty of good faith, CPI made absolutely no effort to cooperate with Deal and perform the contract. That breach relieved Deal of any further obligation as to how her option should be exercised.

CPI further breached the Stock Option Agreement in failing to give assurance of performance when requested to do so. This breach suspended any

further obligation on the part of Deal to perform.

> Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would itself give the obligee a claim for damages for total breach [ ], the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.

*Restatement of the Law, Second, Contracts*, section 251.[5]  CPI wrongfully withheld more than $490,000 of Deal's money.  This fact gave her reasonable grounds to believe CPI might also breach the Stock Option Agreement, giving her the right to demand adequate assurance of performance of CPI.  Of course, CPI never gave that assurance.

CPI's bad faith not only breached the Stock Option Agreement, it creates an estoppel as to the condition precedent now claimed by CPI.  A party to a contract "has the power to waive [a] condition [precedent], or by his own conduct to estop himself from insisting upon it ...." *Doss v. Syntex Agribusiness, Inc.*, 901 S.W.2d 293, 299 (Mo. App. 1995), quoting *Fritts v. Cloud Oak Flooring Company*, 478 S.W.2d 8, 14 (Mo. App. 1972).  At the time Deal exercised her option, CPI already

---

[5]  No Missouri case was found which adopts (or rejects) this section of the Restatement.  When faced with the issue, a Missouri court would likely adopt section 251 of the Restatement.  The Missouri legislature has enacted a similar provision as part of its adoption of the Uniform Commercial Code.  *Section 400.2-609, RSMo*.  Missouri courts recognize the related doctrine of anticipatory breach by repudiation.  *See Hart and Son Hauling, Inc. v. Machaffie*, 706 S.W.2d 586, 588 (Mo. App. 1986).  And courts from many other jurisdictions have adopted section 251.  *See e.g. Roger Edwards, LLC v. Fiddes & Sons, Ltd.*, 387 F.3d 90, 96 (1st Cir. 2004); *Narcon Power Partners, L.P. v. Niagara Mohawk Power Corporation*, 163 F.3d 153, 155 (2nd Cir. 1998).

held over $490,000 of her money. And yet, it never informed her of its purported belief that she was required to remit more money in order to properly exercise her option. Under these circumstances, CPI is estopped to claim that Deal failed to meet any purported condition precedent to the proper exercise of her option.

Finally, CPI's interpretation of the contract is wrong. The Stock Option Agreement did not require that payment be remitted in order for Deal to exercise her option. As to the manner of exercise, the Agreement provides as follows:

> SECTION 5. Manner of Exercise. This option shall be exercised by Optionee ... by giving written notice to the Company of the intention to exercise the option, accompanied by full payment of the purchase price of the shares with respect to which the option is exercised. Such full payment shall be **tendered** either (a) in cash or (b) in shares of the Company's common stock .... (Emphasis added). *S.O.F., ¶ 26*.

Contrary to CPI's argument, the Agreement requires that payment be merely "tendered" with the notice of intent to exercise the option, not remitted. The ordinary meaning of the term "tender" is: "An offer of money." *Black's Law Dictionary*, 5th Edition. Deal tendered full payment. She gave written notice of her intent to exercise her option, which notice made an unambiguous offer to pay the full sale price in cash. *S.O.F., ¶ 28*. Deal properly exercised her option in the manner described in the Stock Option Agreement.

For all these reasons, the Court should declare Deal's right, upon payment of $210,003.84, to receive a proper certificate evidencing her ownership of 16,204 shares of the capital stock of CPI.

The Court should also award Deal damages for CPI's breach of the Stock

Option Agreement.  Had CPI issued Deal her stock when requested, she would have received to date, four dividend payments on those shares.  *S.O.F., ¶ 32*.  Those payments would have totaled $10,370.56.  *S.O.F., ¶ 33*.  This sum should be awarded to Deal.

E.     Attorney's Fees

Under the Employment Agreement, CPI also agreed to pay "all legal fees and expenses which [Deal] may reasonably incur as a result of any contest (regardless of the outcome thereof) by [CPI] of the validity, enforceability of, or liability under, any provision of this Agreement ...."  *S.O.F., ¶ 21*.

CPI has paid a portion of Deal's legal fees incurred to date, but not all such fees and expenses.  *S.O.F., ¶ 22*.  The Court should retain jurisdiction to enter an award for attorney's fees at the conclusion of the case.

### III. Conclusion

The Court should enter the following relief:

A.   An award of $1,133.74 for the interest not paid to Deal as part of the Severance payment made more than one year past due, with interest on such sum from May 23, 2005 at the contract rate of 5.25%;

B.   An award of $106,009 for the contract Base Salary not paid to Deal after she was terminated without Cause, with interest on such sum from May 14, 2004 at the contract rate of 5.25%;

C.   An award of $12,035 for the Bonus owed to Deal after CPI's Change of Control, with interest on such sum from May 14, 2004 at the contract

        rate of 5.25%; and

D.     An award of $10,370.56 as damages for CPI's failure to deliver the stock to Deal upon her exercise of her stock option;

E.     A declaration that Deal is entitled to immediately receive 16,204 shares of the corporate stock of CPI upon her payment of $210,003.84 to CPI; and

F.     Legal fees in an amount to be determined.

                        Respectfully Submitted,

                        GREEN, SCHAAF & JACOBSON, P.C.

                        By: /s/ Allen P. Press
                            Allen P. Press #30074
                            Attorneys for Plaintiff
                            7733 Forsyth Boulevard, Suite 700
                            Clayton, Missouri 63105
                            Phone: (314) 862-6800
                            Fax:   (314) 862-1606

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 8, 2005, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system, upon the following named counsel of record: Matthew B. Robinson.

The undersigned certifies that on the same date true and complete copies of the foregoing were served by mailing the same by U.S. Mail, first-class postage prepaid, August 8, 2005, to each of the following named non-participants in Electronic Case Filing: None.

                                      /s/ Allen P. Press