UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PEGGY DEAL,                              )
                                         )
            Plaintiff,                   )
                                         )
      vs.                                )        Case No. 4:04CV1789 RWS
                                         )
CONSUMER PROGRAMS, INC.,                 )
                                         )
            Defendant.                   )

**<u>MEMORANDUM AND ORDER</u>**

Peggy Deal was a top-level executive with CPI when the company changed

hands in March of 2004. She was terminated without cause shortly thereafter. Deal

had a written employment agreement and a stock option agreement with CPI, and in

this action she seeks damages for breach of both. After a mediation of this case,

CPI paid Deal $490,000 plus interest[1] in accordance with her employment

agreement. This case, however, was not finally resolved because Deal contends

that she is owed additional amounts under the contract, including her unpaid base

---

[1]Plaintiff contends that CPI improperly calculated the interest and actually
owes Deal an additional $1,133.74 in interest. The parties' inability to agree even
when they do agree is unfortunately typical of this case and has resulted in
unnecessary hearings and motion practice before this Court. Counsel are
admonished for their unprofessional demeanor and lack of civility to one another,
both in the courtroom and in writing. The lawyers' continued display of hostility
compromises the dignity of the practice of law and shows disrespect for this Court.

salary and a bonus.  Deal also claims that CPI breached the stock option agreement

by refusing her offer to exercise the option, and she seeks damages as a result.

Finally, Deal seeks punitive damages for CPI's refusal to pay her severance amount

in a timely fashion.[2]  Deal seeks summary judgment on her breach of employment

contract and breach of stock option claims.

CPI also seeks summary judgment, contending that it has now paid Deal all

she was entitled to under the terms of the employment agreement.  CPI further

contends that Deal failed to fulfill the conditions precedent necessary to exercise the

option, and it is accordingly entitled to judgment as a matter of law on her claim that

it breached the stock option agreement.

The parties agree that the agreements are unambiguous and governed by

Missouri law.  After careful review of the entire record in light of the relevant

standards, I find that Deal is entitled to her unpaid salary and bonus, but she failed

to properly exercise her stock option in accordance with the terms of the agreement.

---

[2]Plaintiff contends that this claim (although it is not separately pleaded as
such) is not before the Court on summary judgment and remains pending.  Count III
of plaintiff's amended complaint alleges an ERISA violation.  Although plaintiff
claims that she is seeking summary judgment on Count III, her motion for summary
judgment is devoid of any discussion of ERISA.  Plaintiff is the master of her
complaint, and the Court will assume by plaintiff's briefing that she has abandoned
Count III of her amended complaint and will enter judgment against plaintiff on that
claim.

My analysis follows.

Standards Governing Summary Judgment

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the non-moving party cannot rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

Undisputed, Material Facts

On or about October 21, 2002, CPI employed Deal as an Executive Vice-President under a written employment agreement. The agreement has a one-year term with an automatic renewal for a one-year period unless Deal or CPI notifies the other "in writing at least sixty (60) days prior to the commencement of such one (1)

year period of an intention to terminate this Agreement."   Section 3 of the

agreement entitled "Term of Employment" further provides in relevant part:

> Notwithstanding anything herein to the contrary, the Term of
> Employment shall terminate upon Executive's death or Permanent
> Disability . . . or upon the Corporation's termination of Executive's
> employment for cause . . . .

Section 5(b) agreement also provides for an annual bonus in relevant part as

follows:

> After a Change in Control, in addition to the Base Salary, the
> Executive shall be awarded for each Fiscal Year during the Term of
> Employment an annual bonus . . . in cash at least equal to the highest
> bonus paid or payable to the Executive in respect of any of the Fiscal
> Years during the three Fiscal Years immediately prior to the date of the
> Change of Control.

Section 6 of the agreement is entitled "Termination of Employment."  It is divided

into four subsections: Death or Permanent Disability; Cause; Notification Prior to

One Year Extension; and, Payments for Involuntary Termination Without Cause.

Subsection (d) of the agreement, "Payments for Involuntary Termination Without

Cause," provides in full as follows:

> (1) If prior to a Change of Control (i) the Corporation terminates
> Executive's employment (other than for Cause pursuant to subsection 6
> (b) hereof), or (ii) the Executive's employment terminates by reason of
> the Corporation's termination of this Agreement pursuant to subsection
> 6 (c) hereof, the Corporation shall pay Executive following such
> involuntary termination her full accrued Base Salary through the date of
> termination of employment plus an amount equal to one hundred

percent (100%) of Executive's Base Salary for the fiscal year in which the termination occurs, payable in twenty-six (26) equal bi-weekly installments or at such other intervals as salary is normally paid by the Corporation to its employees.  In addition, within ninety (90) days after conclusion of the Fiscal Years in which the Executive's employment is involuntarily terminated without Cause, the Corporation shall pay the Executive the Annual Bonus she would have earned for the fiscal year, if any, prorated on the basis of the percentage of the Fiscal Year preceding such termination of Executive's employment.  <u>The payments pursuant to this Subsection 6(d)(1) and any payments to which Executive may be entitled pursuant to Subsections 5(g), 5(h), and 5(i) shall be in full discharge of any claims, actions, demands or damages of every nature and description which Executive might have or might assert against the Corporation or any Affiliated Company in connection with or arising from the termination of Executive's employment or the termination of this Agreement.</u>

(2) <u>If following a Change of Control</u> (i) the Corporation terminates Executive's employment (other than for Cause pursuant to Subsection 6(b) hereof), or (ii) the Executive's employment terminates by reason of the Corporation's termination of this Agreement pursuant to subsection 6(c) hereof, the Corporation shall, at the time of such involuntary termination, make a lump sum cash payment to the Executive equal to 200 % of her Base Salary for the Fiscal Year of termination.  In addition to the payment pursuant to this Subsection 6(d)(2) and any payments to which Executive may be entitled pursuant to Subsections 5(g), 5(h) and 5(i), <u>Executive shall be entitled to all remedies available under this Agreement or at law in respect of any damages suffered by Executive as a result of an involuntary termination of employment without Cause.</u>

(emphasis supplied).  The parties refer to the lump-sum cash payment described in

Section 6(d)(2) as a severance payment.  Section 8 of the agreement also states that

if Deal is terminated, she "shall not be obligated to mitigate any damages by seeking

employment or otherwise, and no amount payable hereunder and no benefit or service credit for benefits shall be reduced in the event that the Executive shall accept alternative employment."

Finally, Deal's employment agreement contains two provisions relating to attorney's fees. The first, Section 12, provides that, following a change of control, "the Corporation agrees to pay, to the full extent permitted by law, all legal fees and expenses which the Executive may reasonably incur as a result of any contest (regardless of the outcome thereof) by the Corporation or others of the validity or enforceability of, or liability under, any provision of this Agreement or any guarantee of performance thereof . . . ." The second attorney's fees provision is found in Section 18(b) and states that "[i]n the event that litigation is required to enforce any provision of this Agreement, subject to the provisions of Section 12 hereof, the prevailing party shall be entitled to reasonable attorneys fees."

Deal's employment agreement was automatically renewed for one year on October 21, 2003. However, it is undisputed that on May 14, 2004, CPI terminated Deal without cause following a change in control. At the time of her termination, Deal's annual base salary was $245,000 per year, $138,891 of which she had already received. CPI did not pay Deal her severance upon her termination.

Deal and CPI were also parties to a stock option agreement which granted

Deal the option to purchase 16,204 shares of CPI capital stock at $12.96 per share.

Upon her termination, Deal had the right under the agreement to exercise her option.

Section 5 of the stock option agreement is entitled "Manner of Exercise" and

provides in full as follows:

> This option shall be exercised by Optionee or his estate or beneficiary by giving written notice to the Company of the intention to exercise the option, <u>accompanied by full payment of the purchase price of the shares with respect to which the option is exercised</u>. Such full payment shall be tendered either (a) in cash or (b) in shares of the Company's common stock, with a certificate representing such shares duly endorsed for transfer and with any other documents that may be reasonably required by the Company to effectuate the transfer of the shares. Ownership of the shares acquired upon exercise of the option shall vest when the Company's secretary or transfer agent (as the case may be) records the transfer of such shares to Optionee on the permanent books of the Company.

(emphasis supplied). On June 25, 2004, Deal, through counsel, sent CPI written

notice of her intent to exercise the stock option. It is undisputed, however, that her

written notice was not accompanied by the full payment of the purchase price of the

shares ($210,004) as required by the stock option agreement. Instead, the letter

merely stated that Deal "is prepared to tender cash in the amount of $210,004 for

her stock. Please inform me if CPI intends to perform its agreement under that

contract." When CPI did not respond to the first letter, Deal's counsel sent a

second letter which stated that "[u]nder the current circumstances, Ms. Deal will not

pay CPI the purchase price for the stock.  We assume that CPI would keep the money and refuse to issue Ms. Deal her stock." CPI did not respond to the second letter, either.  This litigation ensued.

After the case was filed, I ordered the parties to mediation.  As a result of the mediation, CPI paid Deal her lump-sum severance of $490,000, plus interest (although Deal now disputes the calculation of interest).  CPI, however, refused to pay any additional amounts to Deal under the terms of the employment agreement. Instead, CPI contends in its summary judgment motion that Deal's severance payment is in lieu of her unpaid salary and bonus payments under the plain language of the employment agreement.  Deal disputes this and alleges by cross-motion for summary judgment that she is entitled to her unpaid salary and bonus payments as a matter of law.  She also contends that the employment agreement requires CPI to pay her attorney's fees.  Finally, Deal argues that she properly exercised her stock option agreement and moves for summary judgment on that claim as well.  CPI disputes this and contends that Deal's claim fails as a matter of law because she failed to perform the conditions precedent necessary to exercise her option.  As discussed below, Deal is right and CPI is wrong about her employment agreement, but CPI is right and Deal is wrong about her stock option agreement.

**Discussion**

The parties agree that the contracts at issue are unambiguous and governed by Missouri law. "Under Missouri law, summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that 'the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document.'" Family Snacks of North Carolina, Inc. v. Prepared Food Prods. Co., Inc., 295 F.3d 864, 867 (8th Cir. 2002) (quoting Missouri Consol. Health Care Plan v. BlueCross BlueShield of Mo., 985 S.W.2d 903, 908 (Mo. Ct. App. 1999)). When a contract uses plain and unequivocal language it must be enforced as written. Lake Cable, Inc. v. Trittler, 914 S.W.2d 431, 436 (Mo. Ct. App. 1996). When a contract is unambiguous, the language used is given its natural, ordinary, and common-sense meaning, and the entire contract is considered to determine the intentions of the parties. Chehval v. St. John's Mercy Medical Center, 958 S.W.2d 36, 38 (Mo. Ct. App. 1997). An ambiguity does not exist merely because the parties dispute the meaning of the contract. Id. Whether language is ambiguous is a question of law for the court. Phipps v. School District of Kansas City, 645 S.W.2d 91, 100 (Mo. Ct. App. 1982). If a contract is unambiguous, the intention of the parties and the legal import of the language of the contract cannot be varied by parol or extrinsic evidence. Allison v. Flexway Trucking, Inc., 28 F.3d 64, 67 (8th Cir. 1994) (applying Missouri law).

<u>Deal is Entitled to Her Unpaid Base Salary and Bonus</u>

Applying these rules of construction, Deal is entitled to her base salary through the end of her contract term, plus her bonus. First, there is no dispute that Deal's written employment agreement was in effect when she was terminated because her employment was automatically renewed for a one-year period on October 21, 2003. Section 3 of the agreement, entitled "Term of Employment," plainly provides for a one-year term of employment, unless Deal dies, becomes disabled or is terminated for cause. It is undisputed that none of these events occurred; therefore, Deal's employment agreement was in effect through October 21, 2004.[3] Had CPI intended for the term of Deal's employment to expire upon a termination without cause, the agreement could have so provided (as it did with for-cause terminations). It does not. The plain language of the agreement must be

---

[3]Deal has not claimed -- as suggested by CPI -- that Deal seeks her unpaid salary and bonus because "CPI did not provide her with sixty days notice before her agreement renewed." Instead, Deal seeks her unpaid base salary and bonus under the one-year contract that was in effect at the time of her termination. CPI is presumably referring to the "Notification Prior to One Year Extension" provision of the employment agreement, but it does not apply here. Instead, that provision allows either party to elect not to automatically *renew* the contract for the following year. It does not grant either party the right to terminate the *existing* contract prior to the one-year term simply by providing sixty days notice. Therefore, CPI's discussion of this issue -- like its discussion of most of the contract provisions --- is irrelevant to the motions before me.

enforced.  CPI was obligated to remit Deal's annual base salary in accordance with the terms of the employment agreement, and it breached the agreement by failing to do so.  Deal is entitled to her unpaid base salary through the expiration of her one-year contract period in the amount of $106,009, plus interest.[4]

The same is true for Deal's bonus payment.  Section 5(b) of the employment agreement states that "[a]fter a Change in Control, in addition to the Base Salary, the Executive shall be awarded for each Fiscal Year during the Term of Employment an annual bonus . . . in cash at least equal to the highest bonus paid or payable to the Executive in respect of any of the Fiscal Years during the three Fiscal Years immediately prior to the date of the Change of Control."  The employment agreement carves out no exceptions for payment of the bonus based upon Deal's termination without cause.  Thus, Deal is entitled to her bonus payment in the amount of $12,035, plus interest.

CPI argues that the termination provisions of the employment agreement provide Deal's exclusive compensation for a termination without cause.  According to CPI, the lump-sum cash payment of 200 percent of her base salary provided for in Section 6 of the agreement is awarded in lieu of Deal's unpaid salary and bonus.

_____

[4]As explained above, the employment agreement specifically states that Deal is not required to mitigate her damages.  Therefore, she is entitled to the full amount of her unpaid base salary.

CPI's arguments are contrary to the unambiguous language of the contract, which

contains no such limitations. Instead, the provision provides in full as follows:

> (2) <u>If following a Change of Control</u> (i) the Corporation terminates
> Executive's employment (other than for Cause pursuant to Subsection
> 6(b) hereof), or (ii) the Executive's employment terminates by reason
> of the Corporation's termination of this Agreement pursuant to
> subsection 6(c) hereof, the Corporation shall, at the time of such
> involuntary termination, make a lump sum cash payment to the
> Executive equal to 200 % of her Base Salary for the Fiscal Year of
> termination. In addition to the payment pursuant to this Subsection
> 6(d)(2) and any payments to which Executive may be entitled pursuant
> to Subsections 5(g), 5(h) and 5(i), <u>Executive shall be entitled to all
> remedies available under this Agreement or at law in respect of any
> damages suffered by Executive as a result of an involuntary termination
> of employment without Cause.</u>

(emphasis supplied). According to the plain language of the employment

agreement, Deal's lump-sum cash payment was awarded *in addition to -- not in lieu*

*of* -- all other remedies she may have for breach of her employment agreement. Had

the parties intended the lump-sum payment to provide Deal's exclusive remedy for

unpaid salary and bonus payments upon CPI's breach of the employment agreement,

they could have so provided. In fact, the previous subsection, which applies to

terminations without cause *prior* to a change in control, contains such an limitation:

> (1) <u>If prior to a Change of Control</u> (i) the Corporation terminates
> Executive's employment (other than for Cause pursuant to subsection 6
> (b) hereof), or (ii) the Executive's employment terminates by reason of
> the Corporation's termination of this Agreement pursuant to subsection
> 6 (c) hereof, the Corporation shall pay Executive following such

involuntary termination her full accrued Base Salary through the date of termination of employment plus an amount equal to one hundred percent (100%) of Executive's Base Salary for the fiscal year in which the termination occurs, payable in twenty-six (26) equal bi-weekly installments or at such other intervals as salary is normally paid by the Corporation to its employees.  In addition, within ninety (90) days after conclusion of the Fiscal Years in which the Executive's employment is involuntarily terminated without Cause, the Corporation shall pay the Executive the Annual Bonus she would have earned for the fiscal year, if any, prorated on the basis of the percentage of the Fiscal Year preceding such termination of Executive's employment.  <u>The payments pursuant to this Subsection 6(d)(1) and any payments to which Executive may be entitled pursuant to Subsections 5(g), 5(h), and 5(i) shall be in full discharge of any claims, actions, demands or damages of every nature and description which Executive might have or might assert against the Corporation or any Affiliated Company in connection with or arising from the termination of Executive's employment or the termination of this Agreement.</u>

(emphasis supplied).  When the two provisions are read in conjunction, it is clear that the lump-sum cash payment awarded to Deal for her termination without cause following a change in control does *not* limit her ability to recover her unpaid base salary and bonus payments as damages for breach of her employment agreement.  Summary judgment in favor of Deal and against CPI will be entered on Deal's claim for breach of the employment agreement.

<u>Deal Did Not Properly Exercise Her Stock Option</u>

Although Deal is entitled to judgment as a matter of law on her employment contract claims, her breach of the stock option agreement fails because she did not

meet the conditions precedent necessary to exercise the option.

Under Missouri law, "[o]ptions to purchase are strictly construed against a person whose right it is to exercise the option." Boatmen's Bank of Mid-Missouri v. Crossroads West Shopping Center, Ltd., 907 S.W.2d 800, 803 (Mo. Ct. App. 1995). "An optionee must exercise the option in strict accordance with its expressly stated terms and conditions." HGS Homes, Inc. v. Kelly Residential Group, Inc., 948 S.W.2d 251, 255 (Mo. Ct. App. 1997).

In this case, the agreement requires Deal to exercise her option by "giving written notice to the Company of the intention to exercise the option, accompanied by full payment of the purchase price of the shares with respect to which the option is exercised." It is undisputed that Deal's written notice of intent was not "accompanied by full payment of the purchase price." Instead, she merely stated that she was "prepared to tender cash." This, however, does not comply with the requirement of the agreement. Because Deal did not meet the condition precedent by submitting written notice "accompanied by full payment of the purchase price," she was not entitled to exercise her option as a matter of law.

Deal argues that her offer to pay met the requirements of the agreement because the next sentence states that the payment may be "tendered" in cash or shares of stock, and Black's Law Dictionary defines a "tender" as "an offer of

money."  Deal's reading of the stock option agreement is contrary to the plain language of the contract, which provides as follows:

> This option shall be exercised by Optionee or his estate or beneficiary by giving written notice to the Company of the intention to exercise the option, <u>accompanied by full payment of the purchase price of the shares with respect to which the option is exercised</u>.  Such full payment shall be tendered either (a) in cash or (b) in shares of the Company's common stock, with a certificate representing such shares duly endorsed for transfer and with any other documents that may be reasonably required by the Company to effectuate the transfer of the shares.  Ownership of the shares acquired upon exercise of the option shall vest when the Company's secretary or transfer agent (as the case may be) records the transfer of such shares to Optionee on the permanent books of the Company.

(emphasis supplied).  When these two sentences are read in conjunction and given their ordinary meaning, it is clear that the second sentence -- which requires Deal "to tender" cash or stock -- describes the method by which "the full payment of the purchase price" should be made.  It does not modify the requirement that Deal must provide written notice accompanied by full payment of the purchase price to exercise her option.  Because she did not comply with the terms of the agreement, Deal was not entitled to exercise her option as a matter of law.

Deal attempts to excuse her failure to comply with the condition precedent contained in the stock option agreement by arguing that CPI breached the agreement by failing to give an assurance of performance when requested to do so and by

breaching the duty of good faith and fair dealing inherent in every contract.[5]  Deal's

reliance on these contractual duties is misplaced because options are not bilateral,

enforceable contracts unless and until the optionee (here Deal) complies with the

conditions precedent necessary to exercise the option.  "An option consists of a

continuing and irrevocable offer which the optionor cannot withdraw during a stated

period."  HGS Homes, Inc., 948 S.W.2d at 255.   "It vests the optionee with a

power of acceptance and, when the optionee accepts the offer in the prescribed

manner, the option is deemed to have been exercised so as to create a binding

bilateral contract. The bilateral contract so created is specifically enforceable."  Id.

(internal citations omitted).   "However, until the optionee accepts, there is no

enforceable contract."  Id.  Because Deal did not "accept the offer in the prescribed

manner," no contract arose and CPI was under no duty to assure her of performance

or respond to her requests that it do so.  Accordingly, her claim that CPI breached

---

[5]Deal also argues that CPI waived its right to enforce the condition precedent
because it allegedly allowed another executive to exercise his option without
accompanying his notice with full payment of the purchase price.  This argument is
unavailing for two reasons.  First, there is no evidence in the record -- no less the
undisputed evidence required to obtain summary judgment -- to support these
allegations.  Deal cites "Paragraph 34" of her statement of facts to support these
claims, but her statement of facts ends at Paragraph 33.  Second, Deal was not a
party to that agreement and therefore cannot rely on any conduct between CPI and
another executive to constitute a waiver of *her* conditions precedent contained in
*her* stock option agreement.

the stock option agreement fails, and summary judgment will be entered in favor of CPI on Count II of the amended complaint.

### Deal Has Not Pleaded Any Basis for Recovery of Punitive Damages

Deal also argues that she has a claim for punitive damages based on CPI's breach of her employment agreement. As I previously stated, Deal has not pleaded a separate count in her amended complaint for punitive damages. Instead, her request for punitive damages can be found in paragraphs 27 and 28 of her amended complaint as follows:

> 27. CPI, in willful breach of the parties' Employment Agreement, has refused to pay Deal the Severance and unused vacation owed her.

> 28. CPI's conduct in this regard is outrageous, justifying an award of punitive damages.

Although Deal has not moved for summary judgment on this claim, I find that it should be dismissed because her pleadings contain no basis for recovery of punitive damages under Missouri law. "The general rule is that punitive damages may not be recovered in breach of contract actions. Courts have carved two exceptions to this rule. First, when the breaching party's conduct amounts to a separate, independent tort apart from an intentional breach of the contract. Second, when the breach of contract is coupled with violations of a fiduciary duty." Peterson v. Continental Boiler Works, Inc., 783 S.W.2d 896, 902-03 (Mo. 1990);

Wash Solutions, Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 896 n.3 (8th Cir. 2005)

("[U]nder Missouri law, punitive damages are generally not available for a breach of

contract claim unless the breach amounts to an independent tort, separate from the

contractual claim, accompanied by allegations of legal malice.") (quoting Kelly v.

Golden, 352 F.3d 344, 351 (8th Cir. 2003)). Deal has not pleaded any tort claims,

and her complaint is devoid of any allegations of a breach of fiduciary duty. As

such, she is not entitled to pursue a claim for punitive damages for breach of the

employment agreement as a matter of law. For this reason, Deal's request for

punitive damages must be dismissed.

### Deal is Entitled to Attorney's Fees

As the prevailing party on her breach of employment contract claim, Deal is

entitled to recover attorney's fees from CPI under Section 18 of the agreement. CPI

has already paid a substantial portion of Deal's attorney's fees, and I will address

the remaining fee issues if necessary by motion practice in accordance with the

Court's local rules.

Although my ruling today disposes of the entire case, one final issue must be

resolved before the Court can enter a final judgment. I would like the parties to

submit to me, within ten (10) days from the date of this Order, a joint memorandum

explaining to me whether Deal is owed additional interest on her lump-sum

severance payment, and if so, what the final amount of the award should be.  **I expect counsel to cooperate on this matter.**  In addition, I would like Deal to submit a proposed Final Judgment for the Court's review.  The final judgment shall include all relevant calculations, including interest calculations where appropriate.  CPI may file any objections to the proposed form of Judgment within five (5) days, or submit its own proposal for my review.

Finally, Deal has filed a motion to strike CPI's opposition to summary judgment because it was filed five days late.  CPI has sought leave to file its opposition out of time.  Because the interests of justice dictate that this case be resolved through fully-briefed summary judgment motions, I will grant CPI leave to file its motion out of time and deny Deal's motion to strike.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [#44] is granted in part and denied in part as stated above, and plaintiff shall have summary judgment on Count I of her amended complaint only.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [#47] is granted in part and denied in part as stated above, and defendant shall have summary judgment on Count II of plaintiff's amended complaint only.

**IT IS HEREBY ORDERED** that Counts II and III of plaintiff's amended

complaint and plaintiff's claim for punitive damages are dismissed with prejudice in their entirety.

**IT IS FURTHER ORDERED** that the parties shall submit to me, within ten (10) days from the date of this Order, a joint memorandum addressing the issue of whether Deal is owed additional interest on her lump-sum severance payment, and if so, what the final amount of the award should be.

**IT IS FURTHER ORDERED** that plaintiff shall submit a proposed Final Judgment for the Court's review within ten (10) days from the date of this Order which shall include all relevant calculations, including interest calculations where appropriate. Defendant may file any objections to the proposed form of Judgment within five (5) days, or submit its own proposal for my review.

**IT IS FURTHER ORDERED** that defendant's motion for leave to file a response in opposition to plaintiff's motion for summary judgment [#57-2] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike [#54] is denied.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this <u>18th</u> day of <u>November</u>, 2005.